REED *v.* ZIFF LODGE No. 119 ORDER OF MASONS.

Opinion delivered January 9, 1928.

1. PLEADING—INDEFINITENESS OF COMPLAINT—REMEDY.—In a suit by a master of a Masonic lodge to enjoin interference with the lodge's possession of a tract of land and a building thereon, failure of the complaint to allege by what authority the suit was brought and failure to make certain trustees holding title for the lodge parties should have been reached by a motion to make the complaint more specific, and not by demurrer; such defects not appearing on the complaint.

2. INJUNCTION—INDEFINITENESS OF COMPLAINT.—A complaint to enjoin interference with possession, alleging a right of possession and possession of a building on a lot, which sufficiently described the building, was not demurrable for indefinite description of the land.

3. TRIAL—TRANSFER OF CAUSE.—It was not error to transfer a cause from the circuit to the chancery court where both parties were seeking equitable relief.

4. VENDOR AND PURCHASER—POSSESSION AS CONSTRUCTIVE NOTICE.— Where a Masonic lodge had purchased a portion of an acre tract, and was in possession when a deed of the remainder to another purchaser was delivered, the corners of their lot being marked by stakes, such possession was equivalent to notice of their title, regardless of the fact that the lodge's deed was delivered subsequent to the delivery of the deed to the purchaser.

5. INJUNCTION—INTERFERENCE WITH POSSESSION OF LOT—EVIDENCE.— Evidence that a Masonic lodge was in the possession of a 50-foot strip of land in an acre tract, and delivery of deed to the purchaser of the remainder of the acre tract, *held* to justify an injunction against interference with the lodge's possession by the purchaser.

6. INJUNCTION—INTERFERENCE WITH POSSESSION OF LAND—PARTIES.— In a suit by the master of a lodge to enjoin interference with the lodge's possession of land, the fact that the title was held for the lodge in the name of certain trustees, of whom the master was one, did not render an order granting an injunction erroneous, because the other trustees were not parties, where they testified as witnesses, and no motion was made to make them parties, since such other trustees thereby estopped themselves from disputing the right of the master to maintain the suit.

Appeal from Chicot Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

*William Kirten,* for appellant.

*Golden & Golden,* for appellee.

SMITH, J.   This suit was brought by Ziff Lodge No. 119 of the Order of Masons, by E. Anderson, worshipful master, against Rufus Reed, and for cause of action it was alleged that the plaintiff was the owner of a tract of land described as follows: "Fifty feet on the northeast corner of a certain parcel of land known as the Brownfield property, and two hundred and ten feet running west on Maple Street from Main Street, thence around said parcel of land," and that title thereto was

acquired under a contract for its purchase dated April 18, 1923, with one T. J. Walker, who later executed a deed thereto when the balance of the purchase money specified in said contract had been paid. It was further alleged that the plaintiff had purchased this land from one T. J. Walker, and that, pursuant to the contract of purchase, plaintiff had taken possession and had moved the Masonic building or lodge hall thereon, and had later received a deed thereto from Walker; that the defendant, Reed, was interfering with the plaintiff's possession and was attempting to inclose the building under a fence, and had forbidden plaintiff from entering the building or going upon the land on which it stood.

There was a prayer that defendant be enjoined from interfering with the plaintiff's possession and use of said land.

Upon filing this complaint a temporary injunction was issued by the chancellor, restraining defendant from interfering with plaintiff's possession.

A demurrer was filed to the complaint upon the grounds that the plaintiff did not have legal capacity to sue; that there was a defect of parties plaintiff; and that the complaint did not state a cause of action. The demurrer was overruled, and defendant, reserving the questions raised thereby, filed an answer, alleging that the description of the land sued for was so indefinite that it was void for its uncertainty.

It was further alleged in the answer that, on November 27, 1923, T. J. and S. F. Walker executed a warranty deed to defendant, conveying an acre of land, which was there properly described, but from the acre so described a strip of land was reserved under the following description: "less a strip of land off the north side of said tract 50 feet north and south by 210 feet east and west, said land having been sold by grantors to the Masonic Lodge."

The deed from Walker to defendant was executed just a year to a day before the execution of the deed from Walker to the lodge, and the answer alleged that the lodge building was not on the land reserved from the

grant in the deed to the defendant, and that plaintiffs were in possession of a portion of the acre to which they had no title whatever. There was a prayer that the injunction be dissolved, and that defendant have judgment for damages. An amended answer and cross-complaint was later filed, in which it was alleged that plaintiff's deed was a cloud on defendant's title, and should be canceled, as the deed to defendant from Walker did not convey all the land he had purchased, and that the same should be reformed so as to describe and convey all the acre except the north fifty feet.

The cause was transferred from the chancery court to the circuit court, and retransferred from the circuit court to the chancery court over defendant's objection.

It appears that Walker had title to a tract of land approximately one acre in area, each of its four sides being 210 feet in length, and it was referred to by all the witnesses as the acre lot. This lot fronts Main Street in the town of Dermott, and, at a time not made certain, but prior to the execution of any of the contracts or deeds herein referred to, the town laid off a street designated as Maple Street, which ran across the north end of the acre lot and at a right angle with Main Street.

It is the insistence of defendant that the strip of land attempted to be reserved from the land granted in the deed to him from Walker practically coincides with Maple Street, whereas the lodge moved its building on a part of the acre lot south of that street. Defendant therefore alleged, and now insists, that, if the deed from Walker to the lodge and the reservation from the grant in his deed from Walker are not void for uncertainty, the strip of land conveyed to the lodge is the north fifty feet of the lot, whereas the lodge building is south of this fifty-foot strip of land.

The court found, on the final submission of the cause, that plaintiff was the owner of the strip of land in controversy, and the temporary injunction was made permanent, and defendant was perpetually enjoined from interfering with the plaintiff's possession.

It is earnestly insisted that the demurrer to the complaint should have been sustained, for the reason that the title to the lot in controversy was not in the lodge or its worshipful master, but was in the name of E. Anderson and three other persons as trustees for the lodge; that the land described could not be identified by the description employed; and that the contract of sale and the deed executed pursuant thereto were both void because of the defective description.

The complaint alleged that the lodge was in possession of the land in controversy, and that the suit was brought by the worshipful master of the lodge to protect this possession, and the demurrer as to the defect of parties was based upon the ground that the worshipful master did not allege title in himself.

The suit was brought as one to protect the possession, and does not allege by what authority the worshipful master of the lodge sues to protect it.  These defective allegations as to the right of the worshipful master to the possession for the use of the lodge should have been reached by a motion to make more specific, and not by a demurrer. *Sanders* v. *Carpenter,* 102 Ark. 187, 143 S. W. 1091. There was no motion to make the complaint specific by alleging the authority under which the suit was brought, nor was there any motion to bring in new parties. The defect of parties was not apparent from the face of the complaint.

It is true the complaint alleged the right to the possession of a strip so indefinitely described that it could not be identified by the description employed; but the complaint alleged the right of possession and the possession of a building on a lot only one acre in area, and this allegation was at least a sufficient description of the house itself.  We conclude therefore that the demurrer was properly overruled.

We are also of the opinion that no error was committed in retransferring the cause from the circuit to the chancery court.  The plaintiff alleged that it was in possession of the property, and each party asked relief of an equitable nature against the other.

The testimony in the case established the following facts: In 1920 Walker entered into a verbal contract with defendant Reed to sell him the acre lot for the sum of $800, deed to be made when that sum had been paid, and Reed, after paying $225 of this amount, discontinued his payments. Walker testified that Reed advised him that he had bought another lot and would not complete his payments.

Walker made the contract herein referred to to sell the lodge a strip of land fifty feet across the lot, the contract being dated April 18, 1923, for the sum of $200, and a cash payment of $50 was made at the time, and Walker staked off the land which he thus contracted to sell, it being parallel to and south of Maple Street. Reed brought suit to enjoin this sale, and alleged his prior purchase, and obtained a temporary injunction. Walker filed an answer to this suit, in which he alleged that Reed had, by his failure to make the deferred payments, forfeited his rights under his verbal contract of purchase, but Walker made a tender of a deed in his answer to Reed, which he offered to deliver upon the payment of the balance due under the contract. This offer was not accepted by Reed, and the injunction was dissolved and the suit dismissed on May 19, 1923.

In the meantime Walker had been sued by his wife for divorce and alimony, and he paid $195 for her claim against the lot. Reed thereupon made another contract with Walker, which Reed called a compromise of the first suit, but which Walker testified was an entirely new trade. When this trade was made the lodge building had been moved on to the lot, where it now stands. Reed testified that, under the new trade or compromise settlement, he was to get title to all the lot except the north fifty feet, and that the original price of $800 was to be paid in the following manner: He was to have credit for the $225 previously paid; he was also to have credit for the $200 paid by the lodge and the $195 which Walker had paid as alimony, which would leave a balance of $175 due, and that he paid this in cash and received a

deed to the entire acre "less a strip of land off the north side of said tract 50 feet north and south by 210 feet east and west, said land having been sold by the grantors to the Masonic Lodge."

It is Reed's contention that, as his deed is prior in time to the one of the lodge, he takes title to the entire acre, which is accurately described in the deed to him, and that the reservation of the fifty-foot strip is void because it was not sufficiently described, and further that, if the reservation is not void, the strip reserved is the north fifty feet of the lot, most of which lies in Maple Street, and not the fifty feet south of Maple Street, on which the building is located.

Walker, however, gives an entirely different version of the second contract with Reed. He says that Reed knew he had contracted to sell the lodge the fifty feet south of Maple Street, and not the north fifty feet of the lot, as the Masons were then in possession of the land which they had bought and the corners of their lot were marked by stakes, a fact well known to Reed, and that the true description of the land reserved in his grant to Reed was the north fifty feet of the lot south of Maple Street, and that he agreed to accept $175 additional from Reed in payment for a deed to the remainder of the acre.

If Reed's testimony is accepted as to the terms of the new trade, the balance due would have been $180, and not $175, as Reed testified; but the court evidently did not accept as true the statement of Reed. The court evidently credited the testimony of Walker, and not that of Reed, and, if Walker's testimony is true, he only intended to sell the acre less the fifty-foot strip south of Maple Street.

We repeat, in this connection, the statement that the Masons were in possession of a portion of the acre when the deed to Reed was delivered, and this possession was equivalent to actual notice to Reed of the title, rights or equities of the occupants. *Thalheimer* v. *Lockert,* 76 Ark. 25, 88 S. W. 591.

The facts in the case cited were that Smith owned the northwest quarter of a section of land, and agreed to sell Lockert forty acres off the west end of the south half. Smith undertook to convey the land, but, by mistake, described it as the southwest quarter of the northwest quarter, which description embraced only twenty-three acres, as the quarter quarter described was fractional, and, after the execution of this deed, Thalheimer bought the remainder of the quarter section. Lockert entered into the possession under the deed which described only twenty-three acres, and later brought suit to reform his deed. Thalheimer had purchased without actual notice of Lockert's occupancy, and Lockert did not place his deed of record until after the sale to Thalheimer, but Thalheimer had been informed by Smith that he had previously sold forty acres to Lockert, who was in the actual possession of eight acres of the land. It was held on the appeal to this court that "such possession was equivalent to actual notice of the title, rights or equities of the occupant," and that, as Thalheimer had purchased with notice of these equities, Lockert was entitled to have his deed reformed.

So here, Reed's second contract with Walker was made after the lodge had taken and was in actual possession of a portion of the land, and had moved its building thereon, and Reed was therefore charged with notice of the lodge's interest in the land, and that interest, as established by the testimony, was to a strip of land adjacent to and south of Maple Street.

When the testimony was taken it appeared that Walker had made the deed to the trustees of the lodge, and that this deed described the strip of land for which the lodge contends. But, while the testimony established the fact that the legal title to the lot was in the trustees, and that they were not parties plaintiff, it also appeared that Anderson, the worshipful master of the lodge, who brought the suit, was one of the trustees, and that the other trustees testified as witnesses in the case and otherwise participated in its prosecution. There was no motion,

after these facts were developed by the testimony, to have the trustees made parties.

In the case of *Missouri Pacific R. Co.* v. *Block,* 142 Ark. 127, 218 S. W. 682, Block, in his individual name, sued to recover damages sustained in the shipment of a carload of hogs. The complaint had alleged title in Block, a fact which was denied by the answer. In the cross-examination of Block, the fact was developed that the hogs were owned by himself and one Mitchell, a partner, and a motion was thereafter made to dismiss the suit because Mitchell was not joined as a party. It was there said:

"Mitchell was present at the trial of the case, and was introduced as a witness by appellee; in fact, the right to recover was established by Mitchell's testimony. His presence at the trial constitutes an approval of the prosecution of the action in the name of his partner alone, and he is estopped to dispute appellee's right to maintain the action. This estoppel would prevent appellant from being subjected to another suit for the same right of action, and there is no prejudice in the court's refusal to dismiss the action or to require Mitchell to be made a party. Appellant did not move the court to make Mitchell a party, which doubtless would have been done if asked."

So here, there was no motion to make the trustees parties, and by their active participation in the trial of this cause they estopped themselves from disputing the right of their co-trustee, suing as the worshipful master or presiding officer of the beneficiary lodge, to maintain the suit.

Upon a consideration of the whole case it appears that equity has been administered, and the decree is therefore affirmed.